# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

600 CLEVELAND, LLC,

      Plaintiff,

v.                                                            Case No: 8:24-cv-1652-KKM-AAS

BANK OF AMERICA, N.A.,

      Defendant.

_____

## <u>ORDER</u>

Plaintiff 600 Cleveland, LLC, moves to dismiss Defendant Bank of America's amended counterclaims, strike Bank of America's affirmative defenses, or, in the alternative, for an order directing Bank of America to provide a more definite statement of its amended counterclaims. Mot. to Dismiss, Strike, and for a More Definite Statement (MTD) (Doc. 27). I grant in part 600 Cleveland's motions to dismiss and strike and deny the motion for a more definite statement.

## I.  BACKGROUND

In 1986, Bank of America's predecessor-in-interest leased from 600 Cleveland's predecessor-in-interest a portion of a building to use for a banking

branch location. Am. Countercls. (Doc. 24) ¶¶ 6–7, 9–10.[1] The lease obligated Bank of America to pay its portion of the building's operating costs. *Id.* ¶ 11. "[A]fter the end of each lease year, or such shorter account period as [600 Cleveland] may determine in [600 Cleveland's] sole discretion," section 5 of the lease obligated 600 Cleveland to provide Bank of America with a "statement showing the amount of the [b]uilding's [o]perating [c]ost[s] for the subject period, and further showing [Bank of America's] share thereof." *Id.* ¶ 13.

600 Cleveland failed to provide these statements, but Bank of America timely paid what it believed to be its portion of the operating costs. *Id.* ¶¶ 14–15. Without the statements, Bank of America was unaware that 600 Cleveland was significantly overcharging Bank of America. *Id.* ¶ 16. In breach of the lease, 600 Cleveland never applied these overages toward the next monthly payment for operating costs. *Id.* ¶¶ 17–19. After the lease expired in 2021, 600 Cleveland has kept $75,000 of

---

[1] At this stage, I accept Bank of America's factual allegations as true and construe them in the light most favorable to Bank of America. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

overcharged funds and has refused, in breach of the lease, to return the funds to Bank of America. *Id.* ¶¶ 20–22.

According to 600 Cleveland, though, it is Bank of America that breached the lease. Compl. (Doc. 1-1) ¶¶ 9–12. Bank of America, 600 Cleveland alleges, substantially altered and modified the building and thus failed, in violation of the lease, to leave the building "in the same condition as at the commencement of the initial lease term." *Id.* ¶ 11. Bank of America has also failed to remediate these issues. *Id.* ¶ 13.

600 Cleveland has since sold the building for a sizeable profit, but, despite demanding damages from Bank of America related to the modifications, did not inform Bank of America of the sale. Am. Countercls. ¶¶ 23–24. 600 Cleveland and its individual owners always intended to flip the building, and Bank of America's modifications did not prevent 600 Cleveland from meeting this goal. *Id.* ¶¶ 25–26.

600 Cleveland initiated this action in state court for breach of the lease. *See* Compl. Bank of America removed the action to federal court and pleaded seven defenses. *See* Am. Answer (Defenses) (Doc. 24). Bank of America also pleaded three counterclaims: (1) breach of contract; (2) recoupment; and (3) accounting. *See* Am. Countercls. 600 Cleveland moves to dismiss the counterclaims, strike the affirmative

defenses, or, in the alternative, for an order directing Bank of America to provide a more definite statement of its amended counterclaims. *See* MTD.

## II.   LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In analyzing the sufficiency of

4

the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### B. Rule 12(f)

Federal Rule of Civil Procedure 8(c) requires a party to "affirmatively state" any avoidance or affirmative defense. "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999). In other words, a defense that "points out a defect in the plaintiff's prima facie case is not an affirmative defense"—even if the defendant labels it as one. *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). But "it is well settled among courts in this circuit that motions to strike

5

are generally disfavored and will usually be denied unless it is clear that the pleading sought to be stricken is insufficient as a matter of law." *Blanc v. Safetouch, Inc.*, No. 3:07-cv-1200, 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008) (citing *Fabrica Italiana Lavorazione Materie Organiche S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776 (11th Cir. 1982); *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345 (M.D. Fla. 2002; *In re Sunbeam Secs. Litig.*, 89 F. Supp. 2d 1326 (S.D. Fla. 1999)); *see also Belmer v. EZPawn Fla., Inc.*, 8:20-cv-1470-T-33SPF, 2020 WL 7419663, at *1 (M.D. Fla. Sept. 28, 2020) (noting that a Court has "broad discretion" to rule on a motion to strike but emphasizing that such motions are "drastic" and are often considered "time wasters" (first quoting *Royal Ins. Co. of Am. v. M/Y ANASTASIA*, No. 95CV60498/RV, 1997 WL 608722, at *3 (N.D. Fla. Jan. 30, 1997); then quoting *Somerset Pharms., Inc. v. Kimball*, 168 F.R.D. 69, 71 (M.D. Fla. 1996))).

An affirmative defense is "insufficient as a matter of law" only if (1) it is patently frivolous on its face or (2) "it is clearly invalid as a matter of law." *Belmer*, 2020 WL 7419663, at *1 (quoting *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002)). An affirmative defense is sufficient to overcome a motion to strike if it "puts into issue relevant and substantial legal and

factual questions." *Id.* (quoting *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995)); *see also Reyher*, 881 F. Supp. at 576 ("[A] court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.").

Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief" does not apply to the statement of affirmative defenses under Rule 8(c). *Gulfstream Aerospace Corp. v. Gulfstream Unsinkable Boats, LLC*, 530 F. Supp. 3d 1167, 1172 (M.D. Fla. 2021). Instead, "affirmative defenses need give only notice to the plaintiff." *Id.*; *see Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it.").

### C. Rule 12(e)

Under Rule 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "The motion must

be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e).

## III.  ANALYSIS

600 Cleveland moves to dismiss Bank of America's counterclaims, to strike Bank of America's affirmative defenses, and, in the alternative, for a more definite statement of Bank of America's counterclaims. *See* MTD.

### A. Motion to Dismiss

600 Cleveland moves to dismiss all three counterclaims. It makes two overarching arguments. First, 600 Cleveland argues that Bank of America fails to plead any factual content in support of its assertions that 600 Cleveland misled Bank of America as to the sale of the building and that 600 Cleveland always intended to flip the building for a profit. MTD at 4–5. 600 Cleveland also argues that it had no legal duty to disclose to Bank of America its intention to sell the building. *Id.* at 6–8. Regardless of the merits of these arguments, 600 Cleveland does not explain their relevance to the sole inquiry in adjudicating a motion to dismiss: whether Bank of America plausibly alleged the three counterclaims. *Iqbal*, 556 U.S. at 678. Therefore,

in analyzing the facial plausibility of Bank of America's counterclaims, I will address these arguments only when relevant to the *Iqbal* analysis.

### 1. Counterclaim I: Breach of Contract

"The elements of a breach of contract claim are (1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach." *Cole v. Plantation Palms Homeowners Ass'n, Inc.*, 371 So. 3d 413, 415 n.2 (Fla. 2d DCA 2023). Bank of America alleges that 600 Cleveland breached the lease by failing to provide statements related to Bank of America's payment of operating costs and overcharging Bank of America and then retaining overcharged amounts. Am. Countercls. ¶¶ 29–35.

600 Cleveland argues that Bank of America's breach claim should be dismissed because Bank of America fails to allege "the time at which the breach identified in its amended counterclaim purportedly occurred." MTD at 8–9. 600 Cleveland relies on Federal Rule of Civil Procedure 9(f), which provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." 600 Cleveland's reliance is misplaced. Rule 9(f) "does not require specificity in pleading time and place," *Hamilton v. Allstate Indem. Co.*, No. 8:06CV2114T27MSS, 2006 WL 3593446, at *2 (M.D. Fla. Dec. 8, 2006), but it instead "merely states the

9

significance of these allegations when they are actually interposed," *Skye v. Maersk Line Corp.*, No. 11-21589-CIV, 2011 WL 4528305, at *3 (S.D. Fla. Sept. 28, 2011) (quoting *Matthew v. United States*, 452 F. Supp. 2d 433, 446 (S.D.N.Y. 2006)); *see Coley v. Gadsden Cnty. Sch. Bd.*, No. 4:09CV434-SPM-WCS, 2010 WL 11640033, at *3 (N.D. Fla. Jan. 27, 2010) ("[C]ontrary to requiring the inclusion of specific allegations of time or place in initial pleadings, the Rule merely states that when a plaintiff makes such allegations, the allegations become material."); 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1308 (4th ed. April 2025 update) ("Rule 9(f) does not impose a requirement that allegations of time or place be made with particularity; it merely indicates the significance of those allegations when they are made.").

To be sure, an allegation as to place or time may be necessary in certain circumstances. *See, e.g.*, 5A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1309. But whether such allegations are necessary is "determined by the substantive nature of the suit, the principles governing the motion for a more definite statement, and the general rules of pleading," not Rule 9(f). *Id.* For example, a pleader may need to specifically allege time when the identity of the document at the heart of a breach of contract action is in doubt. *Id.* Here, of course, 600 Cleveland

appended the lease and various addenda to its state court complaint, *see* (Doc. 1-1) at 5–104, remedying any potential confusion.

In sum, Rule 9(f) does not provide a basis to dismiss Bank of America's breach of contract counterclaim. I therefore deny 600 Cleveland's motion to dismiss Counterclaim I.

### 2. Counterclaim II: Recoupment

A counterclaim for recoupment "seeks to diminish or exceed the damages sought by the plaintiff." *Maynard v. Household Fin. Corp. III*, 861 So. 2d 1204, 1207 (Fla. 2d DCA 2003). The counterclaim "must spring from the same transaction or occurrence as the underlying claim." *Id.*; *see Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.*, 807 So. 2d 669, 670 n.2 (Fla. 4th DCA 2001).

Bank of America alleges that, to the extent "600 Cleveland recovers any remedy related to the claims asserted in its Complaint, [Bank of America] is entitled to recoup the amount of its overpayment of operating costs under the Lease, as well as [Bank of America's] attorneys' fees, interest, and costs related to this action." Am. Countercls. ¶ 47. 600 Cleveland directs no argument at this counterclaim, and therefore 600 Cleveland's motion is denied with respect to Counterclaim II.

### 3. Counterclaim III: Accounting

"To obtain an accounting under Florida law . . . a party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary relationship." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014). Bank of America alleges that an accounting is needed to determine the specific amount of its overpayment. Am. Countercls. ¶¶ 56–58. 600 Cleveland argues that Bank of America fails to plead the facts necessary to support a claim[2] for accounting. MTD at 5–6. I agree.

Bank of America alleges that 600 Cleveland breached the lease by failing to provide statements related to Bank of America's payment of operating costs and overcharging Bank of America and then retaining overcharged amounts. Am. Countercls. ¶¶ 29–35. These allegations do not support the conclusion that the parties' contractual relationship is "sufficiently complicated" to support an equitable accounting claim. *McFliker*, 771 F.3d at 1311. Bank of America does not plausibly allege that a jury could not "readily assess evidence concerning" the amount that 600

---

[2] Although pleaded as a cause of action, the Eleventh Circuit has noted that "an accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right." *McFliker*, 771 F.3d at 1310 n.21 (emphasis in the original). I will proceed on the assumption of the parties that Bank of America may plead accounting as an independent cause of action.

Cleveland overcharged and retained. *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1280 (S.D. Fla. 2010). Although the parties' contractual relationship extended over the course of several years, the fact that "damages may require the aggregation" of successive overpayments does not "make [the] calculation of damages unduly complex or unnecessarily extensive." *Id.* at 1281. Also cutting against the complexity of any damages calculation is the fact that the lease itself, along with various addenda, appears to provide the method for calculating Bank of America's share of the operating costs. *See* (Doc. 1-1) at 9 (providing that Bank of America's proportionate share "shall be calculated on a pro rata basis based upon the ratio of the rentable area of the leased premises (which is hereby agreed to be 42,993 square feet) to the total rentable area of the Building (which is hereby agreed to be 134,449 square feet)"); *id.* at 33 (listing estimated annual share of building operating cost); *id.* at 75 (reducing the pro rata share of operating costs to eight percent); *id.* at 93 (setting the share of operating costs at 8.18%); *cf. Managed Care Sols.*, 694 F. Supp. 2d at 1280 (dismissing an equitable accounting claim when, among other things, "the method for calculating [the basis for damages] is outlined with specificity in the Agreement and is not complicated").

13

Bank of America's allegations are nothing like those in which courts have concluded that an accounting is needed. *See, e.g., Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1344 (S.D. Fla. 2017) (denying a motion to dismiss an accounting claim when the transactions between the parties "involved hundreds of thousands of various PINs and TracFone devices"); *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1307 (M.D. Fla. 2015) ("[The plaintiff] shows that an accurate calculation of the co-marketing fees [the defendant] allegedly owes would involve verifying call records for the traffic [the plaintiff] placed on [the defendant's] network, reviewing 85,000 invoices (each of which is over 100 pages in length), and reconciling revenues [the defendant] refunded to certain companies that disputed whether they owed money to [the defendant]."). Therefore, Bank of America has not plausibly alleged that this case concerns a sufficiently complicated transaction.

Next, although Bank of America alleges that it "would be left without an adequate remedy at law" if it did not receive an accounting, Am. Countercls. ¶ 57, this is nothing more than a "conclusory statement[]" without "further factual enhancement," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Because Bank of America has not plausibly alleged that calculating damages is "beyond the

14

ken of [a] jury trial," *Managed Care Sols.*, 694 F. Supp. 2d at 1281 (quoting *Huebener v. Chinn*, 207 P.2d 1136, 1148 (Or. 1949)), Bank of America has not plausibly alleged that a "judgment for breach of contract is [not] obtainable," and thus that it lacks an adequate remedy at law, *Kee v. Nat'l Rsrv. Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990); *see Bedoyan v. Samra*, 352 So. 3d 361, 365 n.5 (Fla. 3d DCA 2022) ("An equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter; that is because a plaintiff would be able to obtain the information and damages through discovery of her breach of contract claim and thus has an adequate remedy at law." (quotation omitted)).[3]

Because Bank of America also fails to allege that parties were in a fiduciary relationship, *see* MTD at 5, Bank of America has not plausibly alleged an equitable accounting claim.

In response, Bank of America relies on the Eleventh Circuit's decision in *McFliker*. *See* Resp. (Doc. 33) at 6–7. There, the Eleventh Circuit concluded that the parties were in a "fiduciary relationship." *McFliker*, 771 F.3d at 1314. The Eleventh Circuit also concluded that the district court erred in denying an

---

[3] Although Bank of America relies on *McFliker* to argue that it lacks an adequate remedy at law, *see* Resp. at 7, Bank of America does not allege facts anywhere near those relevant to the discovery issues in *McFliker*.

accounting on the basis that the plaintiff "could obtain adequate relief in an action at law for breach of contract." *Id.* This was because such a showing is unnecessary when the parties were in a fiduciary relationship and, even if the district court applied the right standard, the plaintiff lacked an adequate remedy at law due to the defendant's failure to provide necessary discovery. *Id.* at 1314–15.

*McFliker* does not support Bank of America's position because it does not hold that potential difficulties in discovery provide an independent basis for an equitable accounting. *See id.* at 1311 ("Given the availability of the modern discovery regime, the need for discovery, standing alone, is no longer generally regarded as a sufficient ground for granting an accounting."); *Managed Care Sols.*, 694 F. Supp. 2d at 1281 ("Even if [the plaintiff] has difficulty ascertaining those records during discovery, that does not justify taking the resolution of [the plaintiff's] damages away from the jury. An equitable accounting is not a substitute for a motion to compel under [Federal Rule of Civil Procedure 37]."); Resp. at 5 n.3 (citing *McFliker* for this proposition). *McFliker*'s discussion of the plaintiff's discovery issues, and the resulting inadequacy of the breach of contract action, came after the Eleventh Circuit concluded that the parties were in a fiduciary relationship and thus that an equitable accounting was warranted. *See* 771 F.3d at 1314. Therefore, *McFliker* cannot be

16

read to excuse Bank of America's failure to plausibly allege a fiduciary relationship or a sufficiently complicated transaction.

For these reasons, I grant 600 Cleveland's motion to dismiss Counterclaim III.

### 4. Shotgun Pleading

600 Cleveland argues that the amended counterclaims are a shotgun pleading because Bank of America reincorporated all preceding paragraphs in Counterclaims II and III. MTD at 9; *see* Am. Countercls. ¶¶ 38, 48. Because I have dismissed Counterclaim III, I focus on Counterclaim II.

The most common type of shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015); *see id.* at 1321 n.11 (collecting cases). Ordinarily, the adoption of all preceding allegations leads "to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions," which requires a district court ruling on the sufficiency of a claim to "sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund,*

*L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). It also deprives the defense of "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Neither of these concerns is present here. First, Bank of America's adoption of the preceding allegations does not lead to a situation where Counterclaim II contains "irrelevant factual allegations and legal conclusions" because it incorporates the allegations in Counterclaim I. *Strategic Income Fund, L.L.C*, 305 F.3d at 1295. Counterclaims I and II rest on 600 Cleveland's alleged breach of the lease. In other words, both rely on the same factual allegations, and their success depends largely on the same legal conclusions. Second, even with Bank of America's adoption of the preceding allegations, Counterclaim II still provides 600 Cleveland with "adequate notice of the claim" and the ground upon which it rests. *Weiland*, 792 F.3d at 1323. From review, there is no uncertainty as to the grounds—600 Cleveland's alleged breach of the lease—upon which Counterclaim II rests.

For these reasons, I deny 600 Cleveland's motion to dismiss Counterclaim II.

## B. Motion to Strike

600 Cleveland's argues that I should strike all seven affirmative defenses because Bank of America fails to satisfy *Twombly*'s pleading standard. *See* MTD at

18

9–10. 600 Cleveland also argues that each of the seven affirmative defenses are legally deficient. *Id.* at 10–14.[4] I address each affirmative defense in turn.

### 1. First Affirmative Defense: Failure to State a Claim

Bank of America's first affirmative defense is that 600 Cleveland "has failed to state a claim upon which relief can be granted." Am. Answer (Defenses) ¶ 1. Relying on a case applying *Twombly*'s pleading standard to Rule 8(c), 600 Cleveland argues that the Court should strike this affirmative defense because Bank of America "supplies no supporting factual allegations." MTD at 11 (citing *Lettuce Entertain You Enterprises, Inc. v. Talk of the Town Restaurants, Inc.*, No. 612CV1556ORL22KRS, 2013 WL 12155839, at *2 (M.D. Fla. Feb. 27, 2013)). But *Twombly* does not govern the pleading standard for affirmative defenses under Rule 8(c). *See Gulfstream Aerospace Corp.*, 530 F. Supp. 3d at 1172. Instead, a responding party need only "affirmatively *state* any avoidance or affirmative defense." FED. R. CIV. P. 8(c) (emphasis added). This is "more akin to [a] notice" pleading

---

[4] 600 Cleveland argues that each of Bank of America's affirmative defenses rely on the claim that Bank of America "cannot access the Building or obtain crucial evidence because 600 Cleveland sold the Building in March 2024 and no longer controls it." MTD at 10. But 600 Cleveland does not explain why this is true with respect to some of Bank of America's affirmative defenses. I will address 600 Cleveland's argument where relevant to the affirmative defense at issue.

standard. *Gulfstream Aerospace Corp.*, 530 F. Supp. 3d at 1172. Of course, the failure to state a claim is not an affirmative defense at all; the proper remedy "is not to strike the defense, but instead to treat it as a denial." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013); *see Zotos v. U.S. Bank Nat'l Ass'n*, No. 8:22-CV-1726-KKM-AAS, 2023 WL 1409506, at *4 (M.D. Fla. Jan. 31, 2023). Therefore, I deny 600 Cleveland's motion to strike the first affirmative defense and treat it as a denial.

### 2. Second Affirmative Defense: Setoff or Recoupment

Bank of America's second affirmative defense is that 600 Cleveland's "claim fails because the damages sought in the Complaint must be setoff or subject to the doctrine of recoupment due to 600 Cleveland's own breach of contract and [Bank of America's] overpayment of operating costs under the contract." Am. Answer (Defenses) ¶ 2. 600 Cleveland argues that this affirmative defense should be stricken because Bank of America fails to plead "factual content sufficient to state a plausible defense or to raise a right to relief above the speculative level." MTD at 11. For the reasons already stated, Rule 8(a)(2)'s standard does not apply to the pleading of affirmative defenses. Bank of America's second affirmative defense places 600 Cleveland on notice, which is all Rule 8(c) requires. *See Gulfstream Aerospace*

*Corp.*, 530 F. Supp. 3d at 1172. I therefore deny the motion to strike the second affirmative defense.

### 3.  Third Affirmative Defense: Laches

To establish a defense of laches, a defendant must prove: "(1) conduct by the defendant that gives rise to the complaint; (2) that the plaintiff had knowledge of the defendant's conduct and did not assert the opportunity to institute suit; (3) lack of knowledge by the defendant that the plaintiff will assert the right upon which suit is based; and (4) extraordinary injury or prejudice." *Holley v. Erwin-Jenkins*, 369 So. 3d 1218, 1223 (Fla. 2d DCA 2023) (quoting *Ticktin v. Kearin*, 807 So. 2d 659, 664 (Fla. 3d DCA 2001) (per curiam)).

Bank of America pleads that 600 Cleveland's claim "is barred by the doctrine of laches" because 600 Cleveland initiated this action more than two and a half years after it learned of Bank of America's alleged actions. Am. Answer (Defenses) ¶¶ 3–13. 600 Cleveland argues that this defense is legally insufficient because, under Florida law, "laches is not a legal defense to a timely-filed breach of written contract claim." MTD at 12 (citing § 95.11(7), Fla. Stat.). 600 Cleveland also argues that it is "not obligated to [Bank of America] to use money recovered from [Bank of

America] as damages for breach of [the] lease to restore or improve the building."

*Id.*

600 Cleveland does not explain why its second argument provides a basis for striking the third affirmative defense. Also, 600 Cleveland is incorrect that Florida law always forbids a laches defense in this circumstance. Florida case law confirms that a defendant may raise a laches defense in this context "[w]here strong equities appear." *Gratkowski v. ASI Preferred Ins. Corp.*, 351 So. 3d 1216, 1221 (Fla. 2d DCA 2022) (quoting *Smith v. Branch*, 391 So. 2d 797, 798 (Fla. 2d DCA 1980)). In the light of this caselaw, 600 Cleveland has not demonstrated that Bank of America's laches defense is patently frivolous or clearly invalid as a matter of law. *Belmer*, 2020 WL 7419663, at *1. Therefore, I deny 600 Cleveland's motion to strike the third affirmative defense.

### 4. Fourth Affirmative Defense: Standing

Bank of America's fourth affirmative defense is that, because 600 Cleveland sold the building before initiating this action, 600 Cleveland lacks standing to "seek cost of repair damages resulting from the condition of the Building upon expiration of the lease." Am. Answer (Defenses) ¶¶ 14–18.

In moving to strike, 600 Cleveland argues that the Fifth District Court of Appeal's decision in *Pomeranc v. Winn-Dixie Stores, Inc.*, 598 So. 2d 103 (Fla. 5th DCA 1992), demonstrates the legal insufficiency of the fourth affirmative defense. There, much like here, the lessee allegedly violated the lease by leaving the property in disrepair. *Id.* at 104. The lessor sold the property to a third party and thereafter initiated an action for breach of the lease. *See id.* The trial court granted summary judgment to the lessee, but the Fifth District reversed, holding that "[n]either the lessor's cause of action for breach of lease," which accrued when the lessee left the premises in despair, "nor the measure, or amount, of damages resulting from that alleged breach was lost, diminished, or destroyed by the conveyance of the leased premises by the lessor to a third party after the breach of the lease occurred." *Id.*

In response, Bank of America offers three distinctions. Resp. at 16. First, *Pomeranc* was on appeal from a grant of summary judgment. *Id.* Second, the lessor in *Pomeranc* sold the premises to a third party on condition "that either (1) that the former lessee would return as the purchaser's tenant or (2) the lessee would restore the property to the condition required by the former lease." 598 So. 2d at 104. Third, 600 Cleveland may have sold the rights to any breach claim. Resp. at 16.

None of these distinctions are relevant to the affirmative defense of standing here. The sum of Bank of America's fourth affirmative defense is that 600 Cleveland sold the property and thus cannot seek the damages it claims for Bank of America's alleged breach of the lease that accrued before the sale. *See* Am. Answer (Defenses) ¶¶ 14–18. *Pomeranc* states that the opposite is true: the lessor's conveyance of the leased premises after the breach occurred does not affect the "lessor's cause of action for breach of lease nor the measure, or amount, of damages resulting from that alleged breach." 598 So. 2d at 104. This conclusion did not turn on the procedural posture or on the alleged condition of the sale. *See id.* at 105 n.1 (explaining that the alleged conditions on the sale were a matter "between [the third party and the lessor] and do not in anywise inure to the benefit of the former lessee in this action"). Also, although Bank of America speculates that 600 Cleveland may have "sold the rights to any claim related to the [l]ease during the [b]uilding sale," Resp. at 16, Bank of America did not plead this theory, *see* Am. Answer (Defenses) ¶¶ 14–18. Instead, as pleaded, Bank of America's fourth affirmative defense is predicated solely on the sale of the building. *See id.*; *Seibel v. Soc'y Lease, Inc.*, 969 F. Supp. 713, 715 (M.D. Fla. 1997) ("In evaluating a motion to strike, the Court must treat all well-pleaded facts as admitted and cannot consider matters beyond the pleadings.").

Because Bank of America has provided no indication that *Pomeranc* misstated Florida law, Bank of America's fourth affirmative defense is "clearly invalid as a matter of law." *Belmer*, 2020 WL 7419663, at *1 (quoting *Jesse's Computers & Repair, Inc.*, 211 F.R.D. at 683).

One caveat. Bank of America's fourth affirmative defense sounded only in 600 Cleveland's lack of standing to assert the claim and seek damages. In granting the motion to strike under the law as announced in *Pomeranc*, I make no ruling on the issue of mitigation of damages by 600 Cleveland. With that said, I grant 600 Cleveland's motion to strike the fourth affirmative defense.

### 5. Fifth Affirmative Defense: The Lease Bars 600 Cleveland's Claim

Bank of America's fifth affirmative defense is that "at least certain of the damages that 600 Cleveland intends to seek through this litigation concern portions of the Building that [600 Cleveland] was contractually obligated to maintain." Am. Answer (Defenses) ¶¶ 19–22. 600 Cleveland moves to strike on the basis that Bank of America failed to support the fifth affirmative defense with factual content and failed to "identify any specific provision in the 101-page Lease" that supports the affirmative defense. MTD at 12–13. Bank of America argues in response that the fifth affirmative defense places 600 Cleveland on notice. Resp. at 16. Bank of

America also contends that greater specificity is impossible without knowing the damages that 600 Cleveland plans to pursue. *Id.*

I agree with Bank of America. The fifth affirmative defense puts 600 Cleveland on notice that Bank of America plans to argue that "the terms of the written [l]ease bar certain damages that 600 Cleveland may seek in this case." *Id.* Rule 8(c) requires nothing more. *See Gulfstream Aerospace Corp.*, 530 F. Supp. 3d at 1172.

### 6. Sixth Affirmative Defense: Estoppel

"[A]n equitable estoppel defense requires pleading and proof of (1) a representation about a material fact that is contrary to a later asserted position; (2) reliance on that representation; and (3) a detrimental change in position as a result of that reliance." *Dyck-O'Neal, Inc. v. Norton*, 267 So. 3d 478, 482 (Fla. 2d DCA 2019) (emphasis omitted)). Bank of America's sixth affirmative defense is that 600 Cleveland is estopped from seeking any damages related to repairs of the building because 600 Cleveland concealed both its intent to sell the building and the eventual sale. *See* Am. Answer (Defenses) ¶¶ 23–31.

In moving to strike, 600 Cleveland first argues that the sixth affirmative defense does not meet Rule 9(b)'s heightened pleading standard, *see* MTD at 13,

26

which requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake," FED. R. CIV. P. 9(b).

It is far from clear that Rule 9(b)'s heightened pleading standard governs Rule 8(c), which requires that a party "affirmatively state" an "affirmative defense," including "estoppel." Because "stating" means "to set forth in words or declare," Rule 8(c)'s text requires only that the answering party give "notice to the plaintiff." *Gulfstream Aerospace Corp.*, 530 F. Supp. 3d at 1172. For this reason, *Twombly*'s plausibility standard does not govern affirmative defenses. And it would be odd indeed to incorporate Rule 9(b)'s even more demanding standard into Rule 8(c).

Perhaps more importantly, although Bank of America stated that 600 Cleveland "fraudulently concealed its intent to sell the Building," Am. Answer (Defenses) ¶ 24, a "fraudulent or willful intent to deceive is not essential to estoppel" under Florida law, *Gould v. Nat'l Bank of Fla.*, 421 So. 2d 798, 802 (Fla. 3d DCA 1982); *see Dyck-O'Neal, Inc.*, 267 So. 3d at 482. Additionally, elsewhere Bank of America states only that 600 Cleveland concealed its intent without reference to fraud. *See, e.g.,* Am. Answer (Defenses) ¶¶ 28–29, 31. Therefore, Bank of America's invocation of "fraudulently" as an adverb but not as an actual defense (despite Rule 8(c) listing fraud as a potential separate defense) does not require Rule

9(b)'s demanding pleading standard. *Cf. Christian Tennant Custom Homes of Fla., Inc. v. EBSCO Gulf Coast Dev., Inc.*, No. 3:15CV585-MCR-CJK, 2016 WL 11511584, at *6 (N.D. Fla. Aug. 26, 2016) ("The court will not transform [the plaintiff's] promissory estoppel claim into a claim for fraud, and consequently subject it to the more demanding pleading standards, based on its use of [the word "misrepresentation"].").

Moreover, 600 Cleveland identifies no prejudice or confusion of the issues that will result from the denial of its motion to strike the sixth affirmative defense. *See Reyher*, 881 F. Supp. at 576. Although 600 Cleveland contends that *Pomeranc* precludes reducing damages after a sale of the property, Bank of America's estoppel argument relies also on the inability of experts to assess the state of the premises after the sale. Therefore, whatever impact *Pomeranc* might have upon recovery of damages, it clearly does not foreclose all aspects of Bank of America's estoppel defense at this point in the action.

Finally, although 600 Cleveland contends that neither the lease nor Florida law imposes on 600 Cleveland a "duty to disclose its intent to sell (and its ultimate sale)" of the building, MTD at 13–14 (quoting Am. Answer (Defenses) ¶ 29), 600

Cleveland does not explain why, even if it is correct, Bank of America's estoppel defense is legally insufficient.

For these reasons, I deny 600 Cleveland's motion to strike the sixth affirmative defense.

### 7. Seventh Affirmative Defense: Spoliation

Spoliation is "the failure to preserve property for another's use as evidence in pending or future litigation," or "[t]he destruction of evidence." *Vega v. CSCS Int'l, N.V.*, 795 So. 2d 164, 167 n.2 (Fla. 3d DCA 2001) (first quoting Jay E. Rivlin, Note, *Recognizing an Independent Tort Action will Spoil a Spoliator's Splendor,* 26 HOFSTRA L. REV. 1003, 1004 (1998); then quoting *Spoliation*, BLACK'S LAW DICTIONARY 728 (5th ed. 1983)).

Bank of America's seventh affirmative defense is that 600 Cleveland cannot recover damages related to any alleged repairs needed to the building because, by selling the building without providing Bank of America with notice, "600 Cleveland spoliated [Bank of America's] ability to preserve evidence related to those damages." Am. Answer (Defenses) ¶¶ 32–38.

600 Cleveland moves to strike on the basis that spoliation is not a legal defense to a breach of contract claim and that 600 Cleveland did nothing to intentionally

destroy evidence. MTD at 14. 600 Cleveland also argues that Bank of America does not allege what prevents its experts from ascertaining damages or obtaining material evidence from the building. *Id.* Bank of America responds by citing orders denying motions to strike spoliation defenses and arguing that 600 Cleveland improperly attempts to challenge the factual underpinnings of the affirmative defense. Resp. at 19–20.

District judges in this Circuit are divided as to whether spoliation of evidence constitutes an affirmative defense. *Compare NBIS Constr. & Transp. Ins. Servs., Inc. v. Liebherr-Am., Inc.*, No. 8:19-CV-2777-T-33AAS, 2019 WL 12517020, at *2 (M.D. Fla. Dec. 30, 2019) (denying motion to strike a spoliation of evidence affirmative defense), *with Sparta Ins. Co. v. Colareta*, No. 13-60579-CIV, 2013 WL 5588140, at *6 (S.D. Fla. Oct. 10, 2013) ("Because spoliation does not constitute a bar to recovery, and further, because Florida law recognizes a cause of action for spoliation, the Court is persuaded that an allegation of spoliation is not an affirmative defense."). In the light of this disagreement, the seventh affirmative defense is not patently frivolous or clearly invalid as a matter of law. *See Svistina v. Elbadramany*, No. 22-CV-20525, 2023 WL 2734365, at *2 (S.D. Fla. Mar. 31, 2023) (denying motion to strike given "conflicting authority as to whether spoliation

30

is properly considered an affirmative defense"). 600 Cleveland's other argument turns on the perceived insufficient supporting factual allegations. For the reasons explained, this argument does not provide a reason to strike an affirmative defense. Because the seventh affirmative defense provides notice, I deny 600 Cleveland's motion to strike.

### C. Motion for a More Definite Statement

600 Cleveland moves for a more definite statement of Bank of America's counterclaims because Bank of America fails to allege when 600 Cleveland breached the lease. MTD at 15–16. 600 Cleveland is not entitled to relief under Rule 12(e). Even without the temporal allegations, the amended breach of contract and recoupment counterclaims are not "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Hernandez v. Two Bros. Farm, LLC*, 579 F. Supp. 2d 1379, 1381 (S.D. Fla. 2008) (quoting *Betancourt v. Marine Cargo Mgmt.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996)). Unlike *White v. Ideagear, LLC*, No. 8:14-CV-2975-T-26MAP, 2015 WL 1927504, at *3 (M.D. Fla. Apr. 28, 2015), the one breach of contract case 600 Cleveland relies on, Bank of America clearly pleads the contract at issue and the actions that allegedly constitute a breach of that contract. Therefore, 600 Cleveland improperly attempts

to use Rule 12(e) as a "vehicle for obtaining greater detail" rather than a "remedy for an unintelligible pleading." *Ramirez v. F.B.I.*, No. 8:10-CV-1819-T-23TBM, 2010 WL 5162024, at *2 (M.D. Fla. Dec. 14, 2010) (quoting *Aventura Cable Corp. v. Rifkin/Narragansett S. Fla. CATV Ltd. P'ship*, 941 F. Supp. 1189, 1195 (S.D. Fla. 1996)). In sum, because the breach of contract and recoupment counterclaims are detailed enough for 600 Cleveland to respond, I deny 600 Cleveland's Rule 12(e) motion.

## IV.    CONCLUSION

Accordingly, the following is **ORDERED:**

1.      The Motion to Dismiss (Doc. 27) is **GRANTED** as to Counterclaim III and is otherwise **DENIED**.

2.      The Motion to Strike (Doc. 27) is **GRANTED** as to the Fourth Defense and is otherwise **DENIED**.

3.      The Motion for a More Definite Statement (Doc. 27) is **DENIED**.

**ORDERED** in Tampa, Florida, on April 28, 2025.

Kathryn Kimball Mizelle
United States District Judge